FILED

2011 May-31  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| ALANA THOMAS, | ) | **Trial by Jury Demanded** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, State Farm Life Insurance Company ("State Farm"), files this Complaint for Declaratory Judgment seeking a determination of its payment obligations pursuant to a life insurance policy under which Defendant Alana Thomas is the beneficiary. In support, State Farm alleges as follows:

### A. PARTIES, VENUE, AND JURISDICTION

1. Plaintiff State Farm is an insurance company incorporated in the State of Illinois and having its principal place of business in the State of Illinois.

2. Defendant Alana Thomas is an individual under[1] the age of 19 years and, upon information and belief, residing in the Western Division of the United States

---

[1] Given Defendant Thomas's minority status, State Farm has contemporaneously filed a motion seeking the appointment of a guardian *ad litem* for her.

District Court for the Northern District of Alabama.

3.      Jurisdiction of this action is proper pursuant to 28 U.S.C. § 1332, as (a) there is complete diversity of citizenship between State Farm and Defendant Thomas, and (b) the amount in controversy (exclusive of interest and costs) exceeds $75,000.00.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

5.      This proceeding is authorized by 28 U.S.C. § 2201.  State Farm is unaware of any parallel state court proceeding seeking resolution of the issues raised herein.

## B. FACTUAL BACKGROUND

6.      On November 10, 2009, Dustin Banks (now deceased) completed an application for a five-year term life insurance policy. See Exhibit 1, Application.  In the application, Mr. Banks identified his fiancee Defendant Thomas as the beneficiary. See Exhibit 1, Application.

7.      State Farm subsequently issued five-year term life insurance policy no. LF-2735-1761 (the "Policy") with a policy date of November 10, 2009, insuring Mr. Banks's life. See Exhibit 1.

8.      The "Basic Plan Amount" (face value) of the Policy is $100,000. See Exhibit 1, p. 1.

2

9.     Pursuant to the Policy, State Farm "will pay the Proceeds to the Beneficiary when due proof on the Insured's death is received." See Exhibit 1, p. 1 (capitalization in original).   However, the section of the Policy entitled "General Provisions" includes the following limitation:

> **Limited Death Benefit.**  If the Insured dies by suicide while sane or self-destruction while insane within 2 years from the Policy Date, the Basic Plan Amount will not be paid.  The Proceeds in this case will be limited to the premiums paid on the Basic Plan and any additional dividends on the Basic Plan.

See Exhibit 1, p. 7 (emphasis and capitalization in original).

10.     Mr. Banks and Defendant Thomas were married on January 12, 2010. See Exhibit 2.

11.     On September 30, 2010, Defendant Thomas, as the beneficiary of the Policy, presented a claim for payment. See Exhibit 3.  The information Defendant Thomas provided to State Farm disclosed that Mr. Banks died of a gunshot wound on September 26, 2010.  See Exhibit 3.

12.     By letter dated November 15, 2010, State Farm learned that Defendant Thomas had retained attorney William G. Barnes to represent her interests relative to the claim for payment.  See Exhibit 4.

3

13.    The Certificate of Death identifies the immediate cause of Mr. Banks's death as "[g]unshot wound" and the manner of Mr. Banks's death as "[s]uicide." See Exhibit 5.

14.    The final and certified Report of Autopsy provided to State Farm on or about March 28, 2011, identifies the cause of Mr. Banks's death as "[s]hotgun wound" and the manner of Mr. Banks's death as "[s]uicide." See Exhibit 6.

15.    Defendant Thomas's counsel claims that Mr. Banks accidentally died from a shotgun blast. See Exhibit 7, p. 1. Defendant Thomas's counsel has requested full payment under the Policy and has  threatened to bring suit against State Farm. See Exhibit 7, p. 2.

16.    State Farm's continuing efforts to obtain the law enforcement reports and investigation materials regarding the nature, manner, and circumstances of Mr. Banks's death have been unsuccessful.

## C. THE COVERAGE DISPUTE

17.    The section of the Policy entitled "General Provisions" provides for payment of the "Limited Death Benefit" if the insured – Mr. Banks – died by suicide or self-destruction within two years of issuance of the Policy.

18.    State Farm issued the Policy on November 10, 2009.  Mr. Banks died 320 days later.  Thus, Mr. Banks died within two years of the Policy's issuance.

19.     The final, certified Report of Autopsy and the Certificate of Death each identify the manner of death as "[s]uicide."

20.     Defendant Thomas's counsel claims that Mr. Banks died accidentally.

21.     It is State Farm's position that Defendant Thomas is entitled only to receipt of the "Limited Death Benefit" available under the Policy.

22.     It is Defendant Thomas's position that she is entitled to payment of the Basic Plan Amount plus any additional dividends, interest, etc., that may apply.

23.     Under Alabama law, there is a presumption against suicide in determining the cause of a death.  Duncan v. Am. Home Assurance Co., Inc., 747 F.2d 1418 (M.D. Ala. 1990) (claim arising under accidental death policy).  This presumption however, may be overcome by direct and positive evidence of suicide. Jefferson Standard Life Ins. Co. v. Wigley, 29 So. 2d 218 (Ala. 1947) (claim arising from life policy); Fleetwood v. Pac. Mut. Life Ins. Co., 21 So. 2d 696 (Ala. 1945) (same).

24.     Under Alabama law, there is a presumption that the information stated, for example, in a death certificate is true.  Tate v. Gov't Employees Ins. Co., 997 F.2d 1433 (11th Cir. 1993) (claim arising under accidental death policy).

25.     Based on Defendant Thomas's counsel's demand for full payment under the Policy, State Farm understands that Defendant Thomas contests the direct

evidence of Mr. Banks's suicide and, thereby, seeks to assert the presumption against suicide and to rebut the presumption of truth accorded the death certificate and other official reports.

26.    Accordingly, a dispute – constituting a justiciable controversy – exists between State Farm and Defendant Thomas regarding State Farm's obligation of payment under the Policy.

## D.    REQUEST FOR DECLARATORY JUDGMENT AND RELIEF

27.    State Farm believes and avers that the death of Mr. Banks was by suicide or self-destruction and seeks a determination to that effect.

28.    State Farm believes and avers that Defendant Thomas, as the beneficiary of the Policy, is entitled only to receipt of the "Limited Death Benefit" provided under the Policy and seeks a determination to that effect.

WHEREFORE, PREMISES CONSIDERED, State Farm prays that the Court declare and decree that State Farm is obligated only to pay to Defendant Thomas the "Limited Death Benefit" available under the Policy. State Farm further requests that it be afforded such other and further relief as the Court may deem proper.

Bert S. Nettles (NET-001)
Brennan C. Ohme (OHM-001)
Attorneys for State Farm Life
Insurance Company

**Of Counsel:**
HASKELL SLAUGHTER YOUNG & REDIKER, L.L.C.
2001 Park Place
1400 Park Place Tower
Birmingham, Alabama 35203
(205)  251-1000
(205) 324-1133 (FAX)


**Plaintiff demands a trial by jury on all issues raised in this Complaint for Declaratory Judgment.**

_____
Bert S. Nettles (NET-001)
Brennan C. Ohme (OHM-001)
Attorneys  for  State  Farm  Life
Insurance Company



**Summons and Complaint to be served in the manner provided by Rule 4(c)(2), Fed. R. Civ. P.**


4228549.1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **STATE FARM LIFE INSURANCE COMPANY,** | ) |
| | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **ALANA THOMAS,** | ) |
| | ) |
|      **Defendant.** | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Exhibit 1 – Policy LF-2735-1761

# STATE FARM LIFE INSURANCE COMPANY

HOME OFFICE, ONE STATE FARM PLAZA, BLOOMINGTON, ILLINOIS 61710

| | |
|---|---|
| Insured | DUSTIN BANKS |
| Age | 19 |
| Policy Number | LF-2735-1761 |
| Policy Date | November 10, 2009 |
| Basic Plan Amount | $100,000 |
| Total Initial Amount | $100,000 |



This Policy is based on the Application and the payment of premiums for the term of insurance while the Insured lives. The Basic Plan provides level term life insurance renewable every 5 years to the Policy Anniversary when the Insured is age 85. State Farm Life Insurance Company will pay the Proceeds to the Beneficiary when due proof of the Insured's death is received.

**30-Day Right to Examine this Policy.** This Policy may be returned within 30 days of its receipt for a refund of all premiums paid. Return may be made to State Farm Life Insurance Company or one of Our agents. If returned, this Policy will be void from the Policy Date.

**Read this Policy with care.** This is a legal contract between You and State Farm Life Insurance Company.

Secretary

President

---

**BASIC PLAN DESCRIPTION**

Adjustable premium level term life insurance renewable every 5 years to age 85 and convertible to the later of age 75 or the end of the fifth Policy Year. Insurance is payable when the Insured dies. Premiums are payable for the term of insurance. The Basic Plan is eligible for annual dividends.

# CONTENTS

|  | PAGE |
|---|---|
| **Policy Identification** ................................................... | 3 |
| **Schedule of Benefits** ................................................... | 3 |
| **Schedule of Premiums** ................................................. | 3 |
| **Schedule of Insurance** ................................................. | 4 |
| **Definitions** ............................................................... | 5 |
| **General** ................................................................... | 6 |

The Contract.                                        Incontestability.
Dividend.                                          Limited Death Benefit.
Assignment.                                 Termination.
Error in Age or Sex.

| **Ownership** ............................................................... | 7 |

Owner.                                        Change of Owner/Successor Owner.

| **Premium** ................................................................. | 8 |

Payment of Premiums.                    Nonpayment of Premium.
Basic Plan Premiums.                    Accumulations to Avoid Lapse.
Adjustment of Basic Plan Premiums.     Reinstatement.
Grace Period.                               Premium Adjustment When the Insured Dies.

| **Renewal and Conversion** .............................................. | 9 |

Renewal.                                        Conversion.

| **Payment of Benefits** .................................................... | 10 |

Beneficiary Designation.                Order of Payment on the Insured's Death.
Change of Beneficiary Designation.     Methods of Payment.

**The Application and any Riders and Endorsements follow page 10.**

POLICY   IDENTIFICATION

| | | | | |
|---|---|---|---|---|
| Insured | DUSTIN BANKS (Male) | | Age | 19 |
| Policy Number | LF-2735-1761 | | Basic Plan Amount | $100,000 |
| Policy Date | November 10, 2009 | | Total Initial Amount | $100,000 |
| Issue Date | November 30, 2009 | | Policy Class | 1 |
| Owner | DUSTIN BANKS | | | |

SCHEDULE   OF   BENEFITS

| Form | Description | Initial Amount | Benefit Period Ends | Annual Premium | Premiums Payable |
|---|---|---|---|---|---|
| 07021 | Basic Plan (Adjustable Premium 5 Year Renewable Term) Class of Risk: Standard Male | $100,000 | In 2014* | $269.00* | To 2014* |

                                            *Unless renewed in:    2014,2019,2024,
                                                                   2029,2034,2039,
    2044,2049,2054,
    2059,2064,2069,
    2074.

See Adjustment of Basic Plan Premiums provision on page 8 for Basic Plan Premiums after the first 5 Policy Years.

| 07202 | Waiver of Premium | | In 2014 | * | To 2014 |
|---|---|---|---|---|---|

*Shown below for each life insurance benefit
Class of Risk: Standard Male
Basic Plan                                                      $3.00**
**Increasing on each life insurance benefit's renewal date

SCHEDULE   OF   PREMIUMS

| Beginning | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|
| November 10, 2009 | $272.00 | $139.27 | $70.45 | $23.66 |
| November 10, 2014 | 419.00 | 214.53 | 108.52 | 36.45 |
| November 10, 2019 | 432.00 | 221.19 | 111.89 | 37.59 |
| November 10, 2024 | 473.00 | 242.18 | 122.51 | 41.15 |
| November 10, 2029 | 613.00 | 313.86 | 158.77 | 53.33 |
| November 10, 2034 | 838.00 | 429.06 | 217.04 | 72.91 |
| November 10, 2039 | 1,284.00 | 657.41 | 332.56 | 111.71 |
| November 10, 2044 | 2,002.00 | 1,025.02 | 518.51 | 174.17 |
| November 10, 2049 | 3,294.00 | 1,686.53 | 853.15 | 286.58 |

Continued on Next Page

Form 07021                                Page 3                                      20091130

## S C H E D U L E   O F   P R E M I U M S

Continued from Page 3

| Beginning | Annual | Semi-Annual | Quarterly | Monthly |
|-----------|--------|-------------|-----------|---------|
| November 10, 2050 | 2,629.00 | 1,346.05 | 680.91 | 228.72 |
| November 10, 2054 | 4,044.00 | 2,070.53 | 1,047.40 | 351.83 |
| November 10, 2059 | 6,033.00 | 3,088.90 | 1,562.55 | 524.87 |
| November 10, 2064 | 9,305.00 | 4,764.16 | 2,410.00 | 809.54 |
| November 10, 2069 | 13,004.00 | 6,658.05 | 3,368.04 | 1,131.35 |
| November 10, 2074 | 16,472.00 | 8,433.66 | 4,266.25 | 1,433.06 |

If the premium paid is not the annual premium, the total amount of premium due each year is greater than the annual premium.  Premiums other than the annual premium are increased to reflect the time value of money.  Monthly premiums must be paid under one of the monthly payment plans made available.

Initial payment of $23.66 will provide coverage to December 10, 2009.

Form 07021                           Page 3 Continued                           20091130

# SCHEDULE OF INSURANCE

- Insurance Amount  -

| On Insured | Nov 10, |
|---|---|
| $100,000 | 2009 |
| 100,000 | 2010 |
| 100,000 | 2011 |
| 100,000 | 2012 |
| 100,000 | 2013 |
| 100,000 | 2014 |
| 100,000 | 2015 |
| 100,000 | 2016 |
| 100,000 | 2017 |
| 100,000 | 2018 |
| 100,000 | 2019 |
| 100,000 | 2020 |
| 100,000 | 2021 |
| 100,000 | 2022 |
| 100,000 | 2023 |
| 100,000 | 2024 |
| 100,000 | 2025 |
| 100,000 | 2026 |
| 100,000 | 2027 |
| 100,000 | 2028 |
| 100,000 | 2029 |
| 100,000 | 2030 |
| 100,000 | 2031 |
| 100,000 | 2032 |
| 100,000 | 2033 |
| 100,000 | 2034 |
| 100,000 | 2035 |
| 100,000 | 2036 |
| 100,000 | 2037 |
| 100,000 | 2038 |
| 100,000 | 2039 |
| 100,000 | 2040 |
| 100,000 | 2041 |
| 100,000 | 2042 |
| 100,000 | 2043 |
| 100,000 | 2044 |
| 100,000 | 2045 |
| 100,000 | 2046 |
| 100,000 | 2047 |
| 100,000 | 2048 |
| 100,000 | 2049 |

Form 07021

Continued on Next Page
Page 4

20091130

## S C H E D U L E   O F   I N S U R A N C E

Continued from Page 4

- Insurance Amount -

| On Insured | Nov 10, |
|---|---|
| 100,000 | 2050 |
| 100,000 | 2051 |
| 100,000 | 2052 |
| 100,000 | 2053 |
| 100,000 | 2054 |
| 100,000 | 2055 |
| 100,000 | 2056 |
| 100,000 | 2057 |
| 100,000 | 2058 |
| 100,000 | 2059 |
| 100,000 | 2060 |
| 100,000 | 2061 |
| 100,000 | 2062 |
| 100,000 | 2063 |
| 100,000 | 2064 |
| 100,000 | 2065 |
| 100,000 | 2066 |
| 100,000 | 2067 |
| 100,000 | 2068 |
| 100,000 | 2069 |
| 100,000 | 2070 |
| 100,000 | 2071 |
| 100,000 | 2072 |
| 100,000 | 2073 |
| 100,000 | 2074 |
|  | 2075 |

Form 07021                    Page 4 Continued                    20091130

PRINTED IN U.S.A.

| DEFINITIONS |
| --- |

**We, Us,** and **Our** refer to State Farm Life Insurance Company.

**You** and **Your** refer to the Owner.

**Application.** Includes any life insurance application, medical history, questionnaire, and other documents from You or any other person proposed for insurance which are made a part of this Policy.

**Basic Plan Amount.** The amount of insurance on the Insured provided by the Basic Plan shown on pages 1 and 3.

**Benefit Period Ends.** The coverage for the benefit extends to, but does not include, the Policy Anniversary in the year shown on page 3 under this heading.

**Class of Risk.** The underwriting class of the person insured.

**Code.** The U.S. Internal Revenue Code, as amended from time to time.

**Dividend Credits.** Any Dividend Accumulation or any current dividend under Dividend Option 1 or 2.

**Dollars.** Any money We pay, or which is paid to Us, must be in United States dollars.

**Effective Date.** Coverage starts on this date.

**Initial Amount.** The amount of coverage on the Effective Date of each benefit shown on page 3 under this heading.

**Initial Payment.** The amount shown on page 3 You must pay before this Policy becomes effective.

**Insurance Amount.** The amount of life insurance provided by the Basic Plan and any Rider on the dates shown on page 4 under this heading.

**Issue Date.** The date this Policy is issued shown on page 3.

**Officer.** The president, a vice president, the secretary, or an assistant secretary of State Farm Life Insurance Company.

**Payee.** On the Insured's death, the Beneficiaries shown in the Application, unless changed. A Payee can be other than a natural person only if We agree.

**Policy Date.** The Effective Date of this Policy shown on pages 1 and 3.

**Policy Month, Year, or Anniversary.** A policy month, year, or anniversary is measured from the Policy Date.

**Premiums Payable.** Premiums are payable until the Policy Anniversary in the year shown on page 3 under this heading.

**Proceeds.** The sum of the insurance amounts payable under
(1)    the Basic Plan and
(2)    any Rider on the Insured
plus any Dividend Credits, any dividend payable at the Insured's death, and any premium paid for part of the Payment Period beyond the Insured's date of death less any part of a premium due.

---

## DEFINITIONS (CONTINUED)

**Request.** A written request signed by the person making the Request. Such Request must be received by and be on Our request form; or if such Request is not on Our request form, it must include the information required by Our request form.

**Rider.** Any benefit, other than the Basic Plan, made a part of this Policy.

**Successor Owner.** May be named in the Application or later by Request.

**Total Initial Amount.** The amount of life insurance on the Insured provided by the Basic Plan and any Rider on the Policy Date shown on pages 1 and 3.

---

## GENERAL PROVISIONS

**The Contract.** This Policy contains the Basic Plan, any amendments, endorsements, any Riders, and a copy of the Application. This Policy is the entire contract. We have relied on the statements in the Application in issuing this Policy. We reserve the right to investigate the truth and completeness of those statements. In the absence of fraud, those statements are representations and not warranties. Only statements in the Application will be used to rescind this Policy or deny a claim within the time period specified in the Incontestability provision.

Only an Officer has the right to change this Policy. No agent has the authority to change the Policy or to waive any of its terms. All endorsements, amendments, and Riders must be signed by an Officer to be valid.

We may modify this Policy after We notify You to assure continued qualification of this Policy as a life insurance contract under any section of, regulation or ruling under, the Code, as amended from time to time. If We modify this Policy, We will send You the appropriate endorsement to be placed with this Policy. Such endorsement is subject to regulatory approval. If any provision of this Policy conflicts with the law of a jurisdiction that governs this Policy, the provision is deemed to be amended to conform to such law.

**Dividend.** We do not expect to pay dividends on this Policy; however, We may apportion and pay dividends each year. Any such dividends will be paid only at the end of a Policy Year. There is no right to a partial or pro rated dividend prior to the end of a Policy Year. Such dividends will not be paid if all premiums due have not been paid. We will pay You any dividend credits available when this Policy terminates.

You may choose to have Your dividend used under one of these options:
   (1)   Premium Payment - We will apply it toward payment of a premium then due.
   (2)   Dividend Accumulation - We will hold it at interest. We will credit interest at a rate not less than 3% a year. Such interest will be paid only at the end of the Policy Year. You may withdraw accumulations at any time. If withdrawn prior to the end of the Policy Year, there is no right to a partial or pro rated credit of such interest. Accumulations plus interest to the Insured's death will be part of the proceeds.
   (3)   Cash - We will pay it to You in cash.
If You do not choose a Dividend Option or the Dividend Option You choose is not available, We will use Dividend Option 2. You may change the Dividend Option by Request. The change will apply only to dividends paid after We receive the Request.

We may pay a dividend when the Insured dies. Such dividend will be a partial or pro rated amount based on the period from the start of a Policy Year to the Insured's death.

## GENERAL PROVISIONS (CONTINUED)

**Assignment.** You may assign this Policy or any interest in it. We will recognize an assignment only if it is in writing and filed with Us. We are not responsible for the validity or effect of any assignment. An assignment may limit the interest of any Beneficiary.

**Error in Age or Sex.** If the Insured's date of birth or sex is not as stated in the Application, We will adjust each benefit on the Insured to that which the premium paid would have bought at the correct age and sex. Such adjustment will be based on the premium rates in effect on the issue date of the benefit.

**Incontestability.** Except for nonpayment of premiums, We will not contest the Basic Plan after it has been in force during the Insured's lifetime for 2 years from the Policy Date.

Except for nonpayment of premiums, We will not contest any reinstatement after it has been in force during the lifetime of the Insured for 2 years from the Effective Date of the reinstatement.

Each Rider has its own incontestability provision.

**Limited Death Benefit.** If the Insured dies by suicide while sane or self-destruction while insane within 2 years from the Policy Date, the Basic Plan Amount will not be paid. The Proceeds in this case will be limited to the premiums paid on the Basic Plan and any dividends paid on the Basic Plan.

Each Rider has its own limited death benefit provision.

**Termination.** This Policy will terminate on the Policy Anniversary when the Insured is age 85. We will terminate this Policy before that date when this Policy is converted or the premium is not paid by the end of its Grace Period. You may terminate this Policy by Request. This Policy will terminate on the later of the date We receive Your Request or the termination date You choose. Any premium paid for the Payment Period beyond the date this Policy terminates will be paid to You along with any Dividend Accumulations.

## OWNERSHIP PROVISIONS

**Owner.** The Owner is as named in the Application, unless changed. You may exercise any policy provision only by Request and while the Insured is alive, subject to the rights of any assignee that We have on record and to the rights of any irrevocably designated Beneficiary. The Successor Owner will become the Owner of this Policy if You die while this Policy is in force.

**Change of Owner/Successor Owner.** You may change the Owner or Successor Owner by Request while the Insured is alive and this Policy is in force. The change will take effect the date You sign the Request, but the change will not affect any action We have taken before We receive the Request. A change of Owner or Successor Owner does not change the Beneficiary Designation.

## PREMIUM PROVISIONS

**Payment of Premiums.** You may pay premiums at Our Home Office or to one of Our agents. We will give You a receipt signed by one of Our Officers, if You request one.

The first premium is due on the Policy Date. All other premiums are payable on or before their Due Dates. A Due Date is the first day of each Payment Period. A Payment Period may be 1 month, 3 months, 6 months, or 12 months, starting on the same date of the month as the Policy Date. If the Payment Period is 1 month, the monthly premium is due at the start of each 1-month Payment Period. If the Payment Period is 3 months, the quarterly premium is due at the start of each 3-month Payment Period. If the Payment Period is 6 months, the semi-annual premium is due at the start of each 6-month Payment Period. If the Payment Period is 12 months, the annual premium is due at the start of each 12-month Payment Period. If the Due Date does not appear in a calendar month's days, the Due Date will be the last day of that same month. You may change the Payment Period on any Due Date by paying the premium for the new period, but You cannot change the Payment Period if premiums are being waived.

**Basic Plan Premiums.** The Basic Plan Premium is level until the end of the first 5 Policy Years. After the end of the first 5 Policy Years, the Basic Plan Premium is subject to the Adjustment of Basic Plan Premiums provision. Before each Policy Anniversary, we will send You a notice showing the Basic Plan Premium due for that Policy Year.

**Adjustment of Basic Plan Premiums.** After the end of the first 5 Policy Years, the Basic Plan Premiums can be adjusted based on projected changes in investment earnings, mortality, persistency, and expenses. The Basic Plan Premiums will be the same for all policies of the same age, sex, duration, and Class of Risk. Change in the Insured's insurability is not considered. The Basic Plan Premium due in any Policy Year cannot exceed the Basic Plan Premiums shown on page 3. Each Rider, if applicable, will have its own Adjustment of Premium provision.

**Grace Period.** Except for the first premium, 31 days are allowed for the payment of a premium after its Due Date, including any renewal premiums. During this time, the policy benefits continue.

**Nonpayment of Premium.** If any premium has not been paid by the end of its Grace Period, the Accumulations to Avoid Lapse provision will apply. If that provision does not apply, this Policy will lapse as of the Due Date of any unpaid premium. With such lapse, coverage ceases.

**Accumulations to Avoid Lapse.** If any premium has not been paid by the end of its Grace Period, any Dividend Accumulations will be used to pay all or part of that premium. The unpaid balance of that premium remains due. A new Grace Period will be allowed for the payment of this unpaid balance.

We will send You a notice if accumulations are used to pay part of any premium. Tell Us within 90 days after the premium Due Date if You do not want the accumulations used to pay premiums. Accumulations will then be paid in cash, and this Policy will lapse.

**Reinstatement.** You may apply to reinstate this Policy within 5 years after lapse. You must give Us proof of the Insured's insurability that is satisfactory to Us. You must pay all unpaid premiums with compound interest from their Due Dates. The interest rate is 6% a year. Reinstatement will take effect on the date We approve the Insured's insurability.

**Premium Adjustment When the Insured Dies.** If the Insured dies during a Grace Period, any part of a premium due will be paid from the Proceeds. Any premium paid for the Payment Period beyond the Insured's death will be part of the Proceeds.

## RENEWAL AND CONVERSION PROVISIONS

**Renewal.**  The Basic Plan may be renewed at each Renewal Date prior to the Policy Anniversary when the Insured is age 85. The Renewal Dates are the Policy Anniversaries in the years shown on page 3. The premium required for renewal must be paid no more than 31 days after the Renewal Date. The Schedule of Premiums and the Insurance Amount on the Insured are shown as though the Basic Plan will be renewed on each Renewal Date.

**Conversion.**  You may convert this Policy to a new policy on the Insured without evidence of insurability by Request subject to the following:
  (1)   This Policy must be in force.
  (2)   The conversion must occur on or before the later of the Policy Anniversary when the Insured is age 75 or the fifth Policy Anniversary.
  (3)   That Request must include the first premium for the new policy.
The new policy becomes effective when We receive that Request. Any premium paid for this Policy for a period past that effective date will be refunded. Coverage under this Policy will terminate when the conversion occurs.

The new policy will be subject to the following conditions at the time of conversion:
  (1)   It must be a whole life plan then available. At least one plan will be made available.
  (2)   The amount of insurance can be no more than the amount then provided by the Basic Plan.
  (3)   The premium will be based on the Insured's attained age and the sex and Class of Risk shown on page 3. The Class of Risk will be the same as for this Policy.
  (4)   All limitations of this Policy will be part of the new policy.
  (5)   The Incontestability and Limited Death Benefit provisions of the new policy will not extend beyond the period set by this Policy.

## PAYMENT OF BENEFITS PROVISIONS

**Beneficiary Designation.**  This is as shown in the Application, unless You have made a change by Request. It includes the name of the Beneficiary. If You name "estate" as a Beneficiary, it means the executors or administrators of the last survivor of You and all Beneficiaries. If You name "children" of a person as a Beneficiary, only children born to or legally adopted by that person will be included. We may rely on an affidavit as to the ages, names, and other facts about all Beneficiaries. We will incur no liability if We act on such affidavit.

**Change of Beneficiary Designation.**  You may make a change by Request while the Insured is alive and this Policy is in force. The change will take effect on the date the Request is signed, but the change will not affect any action We have taken before We receive the Request.

**Order of Payment on the Insured's Death.**  When the Insured dies, We will make payment in equal shares to the primary Beneficiaries living when payment is made. If the last primary dies, We will make payment in equal shares to the successor Beneficiaries living when payment is made. If, at any time, no Beneficiary is living, We will make a one sum payment to You, if living when payment is made. Otherwise, We will make a one sum payment to the estate of the last survivor of You and all Beneficiaries. You may change this order of payment by Request while the Insured is alive.

**Methods of Payment.**  We will pay the proceeds under the One Sum Method unless You choose another method then available. If the Payee is other than a natural person, We will make payment under the One Sum Method.

All payment intervals are measured from the date the Insured dies.

After the Insured's death, anyone who has the right to make a withdrawal may change the method of payment. This Payee may also appoint a successor payee. The successor payee may be the Payee's estate.

We must receive a Request for payment of the Proceeds and due proof of the Insured's death. Due proof of the Insured's death is evidence satisfactory to Us:
(1)   to establish the date and fact of the Insured's death;
(2)   to permit Us to determine whether Proceeds are payable; and
(3)   such other items and information as may be necessary for Us to comply with laws and regulations related to payment of the claim or administration of the business of insurance.

**Method 1 (One Sum Method).**  We will pay the Proceeds in one sum. Interest will be paid from the date of the Insured's death to the date of payment. The interest rate will be the greater of 2% a year or the interest rate required by law, if applicable.

**Method 2 (Other Method).**  Payment by any other method may be made if We agree.

PRINTED IN U.S.A.

## WAIVER OF PREMIUM BENEFIT RIDER

**General.** This Rider is part of this Policy. It is based on the Application for this Rider and the payment of premiums. The premiums for this Rider are shown on page 3. These premiums are not subject to adjustment. Only certain policy provisions are a part of this Rider. They are "Definitions," "Ownership," "Premium," "The Contract," "Assignment," and "Error in Age or Sex."

**Waiver of Premium Benefit.** We will waive each premium due under this Policy if the Insured becomes totally disabled while this Rider is in force and such Total Disability has existed for 6 continuous months during the lifetime of the Insured. We will waive each premium due under this Policy as long as the Total Disability continues. We will only waive premiums due on and after Total Disability starts. No premium will be waived which was due more than one year prior to the date We receive notice of claim. While premiums are waived, all benefits continue as though You had paid the premiums.

A recurrence of a Total Disability for which We had been waiving premiums will be deemed a continuation of the prior period of Total Disability if the recurrence:
   (1)  results from the same injury or disease that caused the previous Total Disability;
   (2)  starts within 6 months of the date the previous Total Disability ended; and
   (3)  starts while this Rider is still in force.
Such recurrent Total Disability will not be subject to a new requirement that the Total Disability must first exist for 6 continuous months during the Insured's lifetime.

**Total Disability Defined.** Total Disability is a condition caused by injury or disease. During the first 24 months after Total Disability starts, this condition must prevent the Insured from performing substantially all of the work of the Insured's regular occupation. After the first 24 months after Total Disability starts, the condition must prevent the Insured from performing substantially all of the work in any occupation for which the Insured is, or becomes, reasonably qualified based upon education, training, or experience. The Insured's total and irrecoverable loss, caused by injury or disease, of any of the following will be considered Total Disability even if the Insured is able to work:
   (1)  sight in both eyes.
   (2)  use of both hands.
   (3)  use of both feet.
   (4)  use of one hand and one foot.

**Disabilities Not Covered.** We will not waive premiums if Total Disability:
   (1)  starts before the Effective Date of this Rider unless such disability was disclosed in the Application,
   (2)  results from an intended self-injury, or
   (3)  results from any act due to war whether or not the Insured is in the military service. "War" means declared or undeclared war or conflict involving the armed forces of one or more countries, governments, or international organizations.

**Notice and Proof of Total Disability.** We must receive notice of a claim and due proof of Total Disability while the Insured is alive and totally disabled. If this is not done, You should submit such notice and proof as soon as reasonably possible. We may also require You to submit proof of the Insured's continuing Total Disability at reasonable intervals. If You do not submit proof when We require it, no further premiums will be waived. Failure to give such proof will not invalidate or diminish any claim if it can be shown that proof was given as soon as was reasonably possible. We will not require proof more than once a year after the Total Disability has lasted more than 2 years.

**Premium Payments.** If the Insured's Total Disability starts during a Grace Period, the unpaid premium must be paid before a claim will be approved. We may charge interest on that premium from the end of the Grace Period to the date paid at 6% a year. You must pay all premiums that come due until We approve the claim. We will refund any premium that You paid after Total Disability starts which is later waived. If the Insured dies before such refund is made, We will include that amount in the Proceeds.

---

## WAIVER OF PREMIUM BENEFIT RIDER  (CONTINUED)

---

**Renewal.** This Rider may be renewed. The Renewal Dates are the Policy Anniversaries shown on page 3 of this Policy. The premium required for renewal must be paid no later than 31 days after a Renewal Date. Premiums for this Rider are shown in the Schedule of Premiums as though this Rider is renewed on each Renewal Date.

**Automatic Renewal.** If the premium for this Policy is being waived on a Renewal Date, renewal will be automatic.

**Conversion.** When the Basic Plan is converted and this Rider is in force, a waiver of premium benefit will be included in the new policy unless the Insured is then age 60 or over or is totally disabled as defined in this Rider.

The benefit on the new policy will be subject to the following conditions at the time of conversion:
  (1)  The premium will be based on the Insured's attained age, sex, and Class of Risk. The Class of Risk will be the same as for this Rider.
  (2)  All limitations of this Rider will be part of the new policy.
  (3)  The Incontestability provision in the new benefit will not extend beyond the period set by this Rider.

**Automatic Conversion.** If the premiums for this Policy are being waived on the Policy Anniversary when the Insured is age 75, this Basic Plan will be converted to a Whole Life Insurance Basic Plan. The premiums will be waived while the Insured's Total Disability continues.

**Termination.** This Rider will terminate on the Policy Anniversary when the Insured is age 60. We will terminate this Rider before that date when:
  (1)  the Basic Plan or Rider is not renewed,
  (2)  this Policy is terminated by surrender, lapse, or conversion.

You may terminate this Rider by Request. This Rider will terminate the date We receive Your Request. We will revise page 3 of this Policy to show this change. Any premium paid for the payment period beyond the date this Rider terminates will be paid to You.

Termination will not affect any claim for Total Disability which starts before termination.

**Incontestability.** Except for nonpayment of premiums, We will not contest this Rider after it has been in force during the lifetime of the Insured for 2 years from the Effective Date of this Rider unless the Insured becomes totally disabled within that period.

**Effective Date of This Rider.** This is the date coverage starts. It is the same as the Policy Date of this Policy unless a different date for this Rider is shown on page 3.


State Farm Life Insurance Company

*Kim M. Brunner*

Secretary

*Edward B. Rust Jr.*

President

07202                                                                                                                           20060608

STATE FARM LIFE INSURANCE COMPANY

AMENDMENT OF APPLICATION

I, Dustin Banks, amend my application dated November 10, 2009, as
follows:

Issue as a $100,000 5 year term policy.

I agree that this amendment will control over any conflicting
language contained in the application.  The consideration for
this amendment is the issuance of the policy with the above
agreed upon changes.

Dated on _*February 2*_ at _*Woodstock AL*_

_____      _____
Signature of Agent as Witness   Signature of Applicant or Owner

231-1634.3          Policy No. 27351761          IAYS



**STATE FARM LIFE INSURANCE COMPANY**
Bloomington, Illinois

# APPLICATION FOR LIFE INSURANCE

### 1. TYPE OF APPLICATION *(check one)*

**a.** ☒ New Business   **b.** ☐ Change of Plan/Added Benefits
☐ Term Conversion with Increase in Amount

☐ Universal Life Increase
☐ Select Term Re-entry

Existing Plan Number: _____

### 2. PROPOSED INSURED 1   *(Print name in full)*

MR ☐  MS ☐  LAST NAME: **Banks**  FIRST NAME: **Dustin**  MIDDLE INITIAL

**a.** MAILING ADDRESS:  CITY: **West Blocton**  STATE: **AL**  ZIP CODE: **35184**

**b.** _____  DATE: **AL**  SEX: **M**  AGE: **19**

UNITED STATES OR CANADIAN CITIZEN  YES ☐  NO ☒

**c.** MARITAL STATUS  HEIGHT: **5'4**  WEIGHT: **170**  STATE OF BIRTH: **AL**

**d.** **Single**  OCCUPATION: **Diesel mechanic**  EMPLOYER'S NAME: **Racon Inc.**

**e.** Do job duties involve work in one of the following occupation categories: amusement, sports, construction, explosives, diving, liquor, logging, mining, gas, or oil? *(If yes, explain exact duties)*   YES ☐  NO ☒

**f.**

### 3. PROPOSED INSURED 2   *(Additional Insured or Payor, print name in full)*

MR ☐  MS ☐  LAST NAME  FIRST NAME  MIDDLE INITIAL

**a.** SOCIAL SECURITY OR TAX IDENTIFICATION NUMBER  DRIVER'S LICENSE NUMBER  STATE  SEX  BIRTH DATE MO-DAY-YR  AGE

**b.** MARITAL STATUS  HEIGHT  WEIGHT  STATE OF BIRTH  UNITED STATES OR CANADIAN CITIZEN  YES ☐  NO ☐

**c.** OCCUPATION  EMPLOYER'S NAME

**d.** Do job duties involve work in one of the following occupation categories: amusement, sports, construction, explosives, diving, liquor, logging, mining, gas, or oil? *(If yes, explain exact duties)*   YES ☐  NO ☐

**e.**

### 4. APPLICANT/OWNER   *(If not Proposed Insured 1, print name in full)*

LAST NAME  FIRST NAME  MIDDLE INITIAL  SOCIAL SECURITY OR TAX IDENTIFICATION NUMBER

**a.** MAILING ADDRESS  CITY  STATE  ZIP CODE

**b.** **Successor Owner** (Required unless the Applicant/Owner is a TRUST or CORPORATION)  MIDDLE INITIAL
LAST NAME  FIRST NAME

### 5. Complete 5 if Proposed Insured is under age 16

**a.** Is Proposed Insured to be Owner at and after age 21?  YES ☐  NO ☐   **b.** Give amount of insurance in force on: *(If none, so indicate)*
Father $ _____  Mother $ _____

123219.1

REDACTED

04-1

**6.  COVERAGES APPLIED FOR**          *(Do not complete 6-8 if applying for Universal Life.)*

a.  **Amount Applied For: $** _____

Basic Plan coverage applied for:

☐ Whole Life                    ☐ Term to Age 95 - 10        ☒ 5 Year Term            ☐ Decreasing Term - 15
☐ 15 Pay Life                   ☐ Term to Age 95 - 20        ☐ Return of Premium Term - 20   ☐ Decreasing Term - 30
☐ Single Premium Life   ☐ Term to Age 95 - 30        ☐ Return of Premium Term - 30

b.  **Riders/Benefits applied for:** *(Check Ratebook for availability of riders.)*

Waiver of Premium (PI 1 only)    YES ☒  NO ☐
☐ Payor (Complete PI 2)
☐ Guaranteed Insurability Option $ _____
☐ Children's Term Rider                  _____ Units
☐ 5 Year Term (PI 1)                        $ _____
☐ 5 Year Term (PI 2)                        $ _____

☐ Decreasing Term - 15 (PI 1)   $ _____
☐ Decreasing Term - 15 (PI 2)   $ _____
☐ Decreasing Term - 30 (PI 1)   $ _____
☐ Decreasing Term - 30 (PI 2)   $ _____

---

**7.  DIVIDEND OPTION**

If the dividend option chosen is not available or no option is chosen, policy provisions determine the option.
☐ Paid-up Additions          ☐ Accumulate          ☐ Reduce Premium          ☐ Cash

---

**8.  *Complete if policy applied for has an APL provision.***

Do you want the Automatic Premium Loan provision to apply, if applicable?          YES ☐   NO ☐

---

**9.  UNIVERSAL LIFE**

a.  **Initial Basic Amount: $** _____

b.  **Death Benefit:** *(Complete for new policy only)*
If no option is chosen, policy provisions determine the option.
☐ Option 1 — Basic Amount          ☐ Option 2 — Basic Amount plus Account Value

c.  **Riders/Benefits applied for:** *(Check Ratebook for availability of riders.)*
Waiver of Monthly Deduction (PI 1 only)    YES ☐  NO ☐
☐ Guaranteed Insurability Option $ _____          ☐ Level Term (PI 2)          $ _____
☐ Children's Term Rider                  _____ Units

d.  **Dividend Option:**
If no option is chosen, policy provisions determine option.
☐ Addition to Account Value          ☐ Cash

e.  **Planned Premium:**
Mode chosen:  ☐ Annual          ☐ SFPP   Existing SFPP Account #: _____
                      ☐ Other Special Monthly: _____
Amount to be billed each payment date: $ _____

f.  **Increase in Basic Amount For Universal Life Only:** *(Do not complete for new policy.)* $ _____

**10. BENEFICIARY DESIGNATION — Proposed Insured 1**

Completion of this section will replace all previous rider and policy designations for this policy. If a Change of Plan or an addition in coverage, this designation will replace previous designations for this insured.

| PRIMARY BENEFICIARY - FULL NAME | RELATIONSHIP |
|---|---|
| ALana Thomas | Fiance |

| SUCCESSOR BENEFICIARY - FULL NAME | RELATIONSHIP |
|---|---|
| | |

**11. BENEFICIARY DESIGNATION — Proposed Insured 2**

Complete for Additional Insured's rider only if the Beneficiary provision in the rider is NOT desired. If this section is completed, the Payment of Benefit provision of the policy will control rather than the Beneficiary provision of such rider. "Additional Insured" would be used in place of the "Insured." If a Change of Plan or an addition in coverage, this designation will replace previous designations for this insured.

| PRIMARY BENEFICIARY - FULL NAME | RELATIONSHIP |
|---|---|
| | |

| SUCCESSOR BENEFICIARY - FULL NAME | RELATIONSHIP |
|---|---|
| | |

**Complete 12 if CTR applied for.**   *List children under age 18 (if none, so state).*

| 12. LAST NAME, FIRST NAME, MI *(if last name different, explain)* | RELATIONSHIP TO PROPOSED INSURED 1 | BIRTHDATE MO. | DAY | YR. | AMOUNT NOW INSURED FOR |
|---|---|---|---|---|---|
| | | | | | $ |

**Complete 13-15 if CTR applied for OR Proposed Insured 1 is under age 16.**

|  | YES | NO |
|---|---|---|
| 13. In the last 10 years, has Proposed Insured 1 or any children named in question 12, been diagnosed, treated or been given advice by a member of the medical profession for: *(If yes, check all that apply and explain)* | ☐ | ☐ |

| a. ☐ birth defect | e. ☐ mental disorder | i. ☐ impairment of sight, hearing, or speech |
|---|---|---|
| b. ☐ asthma | f. ☐ seizure | j. ☐ diabetes |
| c. ☐ kidney disease | g. ☐ heart murmur | k. ☐ anemia |
| d. ☐ leukemia | h. ☐ cancer | |

|  | YES | NO |
|---|---|---|
| 14. Has Proposed Insured 1 or any children named in question 12, ever been diagnosed by a member of the medical profession or tested positive for Human Immunodeficiency Virus (AIDS virus) or Acquired Immune Deficiency Syndrome (AIDS)? *(If yes, explain)* | ☐ | ☐ |
| 15. In the last 3 years, has Proposed Insured 1 or any children named in question 12, seen a doctor for any reason not previously explained excluding any routine physical examination with normal findings? *(If yes, explain)* | ☐ | ☐ |

123219.1

04-14-2008

**16. Complete for all Applications**

a. Proposed Insured 1 or Applicant, if other than Proposed Insured 1, do you own any life insurance or annuities on yourself or others?

|  | YES | NO |
|---|---|---|
|  | ☐ | ☑ |

b. Is the total amount of insurance in force on you more than $200,000? *(If yes, give amounts and details.)*

c. Is anyone now applying for life or health insurance on you with any other company? *(If yes, in Explanations state company and amounts.)*

| | PI 1 | | PI 2 | |
|---|---|---|---|---|
| | YES | NO | YES | NO |
| b. | ☐ | ☑ | ☐ | ☐ |
| c. | ☐ | ☑ | ☐ | ☐ |

---

**Applications (Ages 16 & up):  Complete 17-21**

| | PI 1 | | PI 2 | |
|---|---|---|---|---|
| | YES | NO | YES | NO |

**17. Have you used tobacco or other nicotine products in any form in the last 36 months?**
*(If yes, please provide month/year last used* PI 1 __11__ / __09__  PI 2 ____ / ____ *)*
 Month  Year      Month  Year

☑ ☐ | ☐ ☐

**18. In the last 10 years, have you been diagnosed, treated, or been given advice by a member of the medical profession for:** *(If yes, explain)*

☐ ☑ | ☐ ☐

*(Check all that apply)*
PI 1  PI 2
a. ☐ ☐ cancer or tumor
b. ☐ ☐ diabetes

*(Check all that apply)*
PI 1  PI 2
c. ☐ ☐ heart disease or disorder, chest pain, high blood pressure
d. ☐ ☐ stroke or transient ischemic attack (TIA)

**19. Have you ever been diagnosed by a member of the medical profession or tested positive for Human Immunodeficiency Virus (AIDS virus) or Acquired Immune Deficiency Syndrome (AIDS)?** *(If yes, explain)*

☐ ☑ | ☐ ☐

**20. In the last 3 years, have you:** *(If yes, explain)*

a. been convicted of or pleaded guilty to any moving violations or driving under the influence of alcohol or drugs?

☐ ☑ | ☐ ☐

b. engaged in any type of aviation activity (other than as a passenger); or is any such activity planned in the next 6 months?

☐ ☑ | ☐ ☐

c. engaged in avocations such as mountain/rock climbing, vehicle racing, SCUBA/skin diving, sky diving, ballooning or hang gliding; or is any such activity planned in the next 6 months?

☐ ☑ | ☐ ☐

**21. Do you plan to leave or travel from the United States or Canada in the next 6 months?** *(If yes, explain)*

☐ ☑ | ☐ ☐

---

**Applications (Ages 16 & up if NO medical exam required): Complete 22-25**

| | PI 1 | | PI 2 | |
|---|---|---|---|---|
| | YES | NO | YES | NO |

**22. Have you ever applied for or received disability benefits; had an injury to your neck, back, arm, or leg; or had any loss of sight or hearing?** *(If yes, explain)*

☐ ☑ | ☐ ☐

**23. In the last 10 years, have you been diagnosed, treated, or been given advice by a member of the medical profession for:** *(If yes, explain)*

☐ ☑ | ☐ ☐

*(Check all that apply)*
PI 1  PI 2
a. ☐ ☐ respiratory disorder
b. ☐ ☐ liver or intestinal disorder

*(Check all that apply)*
PI 1  PI 2
c. ☐ ☐ mental or nervous disorder
d. ☐ ☐ blood disorder

**24. In the last 5 years, have you used cocaine, marijuana, or any other controlled substance or narcotic not prescribed by a doctor; or had treatment or counseling for alcohol or drug use, or been advised to seek treatment or counsel for alcohol or drug use?** *(If yes, explain)*

☐ ☑ | ☐ ☐

**25. In the last 5 years, have you for any reason not previously explained:** *(If yes, explain)*

a. seen a doctor or psychologist?

☐ ☑ | ☐ ☐

b. had medication prescribed **other than** medications for cold, flu, seasonal allergies (i.e. hay fever) or birth control? *(If yes, list and explain)*

☐ ☑ | ☐ ☐

c. had or been advised to have treatment or a test in any lab, clinic, or hospital?

☐ ☑ | ☐ ☐

d. been told surgery was necessary?

☐ ☑ | ☐ ☐

123219.1

04-14-2008

**26.  EXPLANATIONS:**

If space below is insufficient, use additional sheets which will be part of this application. Sheets must be signed & dated by Proposed Insured(s), and/or Applicant, and witnessed by Agent.

123219.1

04-14-2008

PAGE 6 OF 6

## 27. AGREEMENTS

Coverage will be effective as of the policy date if the following conditions are met: the first premium is paid when the policy is delivered; the Proposed Insureds are living on the delivery date; and, on that delivery date, the information given to the Company is true and complete without material changes.

For changes in Basic Amount for a Universal Life Policy, the change will be effective on the deduction date on or next following acceptance of the change by the Company if on such deduction date the following conditions are met: there is enough cash surrender value to make the required deduction; the Proposed Insureds are all living; and the information given to the Company is true and complete without material changes.

However, if a binding receipt has been given and is in effect, its terms apply.

All Proposed Insureds and the Applicant state that the information in this application and any medical history is true and complete. It is agreed that the Company can investigate the truth and completeness of such information while the policy is contestable.

By accepting the policy, the Owner agrees to the beneficiaries named, method of payment, and corrections made. No change in plan, amount, benefits, or age at issue may be made on the application unless the Owner agrees in writing. Only an authorized company officer may change the policy provisions. Neither the agent nor a medical examiner may pass on insurability.

Any policy issued on this application will be owned by Proposed Insured 1 or the Applicant, if other than Proposed Insured 1.

## SOCIAL SECURITY OR TAX IDENTIFICATION NUMBER (TIN) CERTIFICATION

By signing this application, I certify under penalties of perjury that (1) the TIN shown above is correct, and (2) I am exempt from backup withholding, or that I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding, *(If you are subject to backup withholding, cross out item 2,)* and (3) I am a U.S. person (Including a U.S. resident alien).

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. (See instructions.)

Date Signed _11/10/09_

Signature of Proposed Insured 1 X _____
*Not required if Proposed Insured is under age 16*

at _Woodstock   AL_
       City           State

Signature of Proposed Insured 2 X _____

Signature of Agent as
Witness to all Signatures X _Lee S Thompson_
_by Jeanalee Thompson, LSAy_

Signature of
Applicant X _____
*Not required unless applicant is other than Proposed Insured 1. If a firm or corporation is to be the owner, give its name and signature of authorized officer*

123219.1

04-14-2008



**BASIC PLAN DESCRIPTION**

Adjustable premium level term life insurance renewable every 5 years to age 85 and convertible to the later of age 75 or the end of the fifth Policy Year. Insurance is payable when the Insured dies. Premiums are payable for the term of insurance. The Basic Plan is eligible for annual dividends.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ALANA THOMAS, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Exhibit 2 – Certificate of Marriage

Jerry C. Pow, Probate Judge, Bibb County, Alabama

# Alabama
## Certificate of Marriage

State File Number **101**

TYPE IN PERMANENT
BLACK INK

| LICENSE TO MARRY | | | | | | | | | ISSUING COUNTY Bibb |
|---|---|---|---|---|---|---|---|---|---|

If any person hereby authorized to solemnize marriages within Alabama: You are hereby authorized to celebrate the rite of matrimony for the persons agreed hereon, after which you are required by law to return this license, duly certified under your hand, to the Probate Judge of the issuing county within one month.

**GROOM**

2. GROOM'S NAME First DUSTIN Middle ALLEN Last BANKS (Print last name if capital) | 3. DATE OF BIRTH (Month, Day, Year) | 4. RACE (Specify American Indian, Black, White, Etc.) WHITE

5. RESIDENCE—City, Town, or Location and Zip Code WEST BLOCTON | 6. INSIDE CITY LIMITS YES | 7. COUNTY BIBB | 8. STATE ALABAMA | 8. NO. OF PREVIOUS MARRIAGES 0

10. IF PREVIOUSLY MARRIED, LAST MARRIAGE ENDED— (Specify Death, Divorce, Dissolution, Annulment) | 11. EDUCATION—Specify ONLY highest grade completed (Elementary or High School (0-12) | College (1-4 or 5+) 10 | 12. SOCIAL SECURITY NUMBER

13. FATHER'S NAME First ALLEN Middle BROWN Last BANKS | 14. MOTHER'S NAME First MARY Middle JANE Last SMITH | Maiden Last Name

**BRIDE**

16. BRIDE'S NAME First ALANA Middle DANIELLE Last THOMAS (Print last name if capital) | 18. BRIDE'S MAIDEN LAST NAME (if different) | 17. DATE OF BIRTH (Month, Day, Year)

19. RACE—(Specify American Indian, Black, White, etc.) WHITE | 20. RESIDENCE—City, Town, or Location and Zip Code WEST BLOCTON | 30. INSIDE CITY LIMITS (Specify Yes or No) YES

21. COUNTY BIBB | 22. STATE AL | 22. NO. OF PREVIOUS MARRIAGES 0 | 24. IF PREVIOUSLY MARRIED, LAST MARRIAGE ENDED—(Specify Death, Divorce, Dissolution, Annulment)

25. EDUCATION—(Specify ONLY highest grade completed) (Elementary or High School (0-12) 11 | College (1-4 or 5+) | 26. SOCIAL SECURITY NUMBER

27. FATHER'S NAME First SEAN Middle DRAPER Last THOMAS | 28. MOTHER'S NAME First CHARLA Middle LYNNE Last KEENUM | Maiden Last Name

We hereby certify that the information provided is accurate to the best of our knowledge and belief and we plan to marry under the laws of this state.

**SIGNATURES**

29. GROOM – SIGNATURE | 30. BRIDE – SIGNATURE Alana Thomas

**LOCAL OFFICIAL**

31. JUDGE OF PROBATE – SIGNATURE Jerry C. Pow | 32. ISSUING DATE (Month, Day, Year) 01/12/2010 | 33. EXPIRATION DATE (Month, Day, Year) 02/11/2010

**CEREMONY**

34. I CERTIFY THAT THE ABOVE NAMED PERSONS WERE MARRIED ON (Month, Day, Year) 01/02/2010 | 35. WHERE MARRIED—City, Town of Location and Zip Code CENTREVILLE | 36. COUNTY BIBB

37. SIGNATURE OF PERSON PERFORMING CEREMONY Jerry C. Pow | 38. TYPED OR PRINTED NAME OF PERSON PERFORMING CEREMONY JERRY C. POW

39. TITLE OF PERSON PERFORMING CEREMONY PROBATE JUDGE | 40. ADDRESS OF PERSON PERFORMING CEREMONY - Street and Number or RFD Number, City or Town, State, Zip Code CENTREVILLE, AL

**LOCAL OFFICIAL**

41. DATE CERTIFICATE RETURNED TO JUDGE OF PROBATE (Month, Day, Year) 01/12/2010 | 42. MARRIAGE LICENSE RECORD Book Number 10 Page Number 249 | 43. JUDGE OF PROBATE – SIGNATURE Jerry C. Pow

THIS LICENSE IS VOID UNLESS SOLEMNIZED WITHIN 30 DAYS FROM ISSUING DATE.

ADPH-HS-60/Rev.10-00—tm

**REDACTED**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

STATE FARM LIFE INSURANCE )
COMPANY, )
                        )
     **Plaintiff,** )
                        )
**vs.** )
                        )
**ALANA THOMAS,** )
                        )
     **Defendant.** )

## COMPLAINT FOR DECLARATORY JUDGMENT

Exhibit 3 – Claim Submission

Sep 30 10 03:36p                                                                        p.3



**State Farm Life Insurance Company** (not licensed in New York or Wisconsin)
**State Farm Life and Accident Assurance Company** (licensed in New York and Wisconsin)

Doc 11 Check Dgt

### Life Claim Information Request and Substitute Form W-9
### State Farm Benefit Management Account® (SFBMA)/One Sum

Policy Number
**2735-1761**

The following statement is required on this claim form by law in several states: Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and civil penalties.

**Section 1 - Complete for all claims.** If the beneficiary is a Trust, please provide a list of all trustees on the reverse side this form, or on a separate sheet.
Claimant's Information: Full Name of Claimant: _Alana Thomas_

Date of Birth: _____   Phone Number: Home: _____   Work: _____

Deceased's Information: Full Name of Deceased: _____ **DUSTIN BANKS** _____   Date of Birth: _04/03/90_

List of other names by which the deceased may have been known: _____

Manner of Death (illness, accident, homicide, suicide) _Unknown_   Cause of Death _Gunshot wound_

**Section 2 - For State Farm Benefit Management Account (SFBMA) Option** - *Please complete Sections 1, 2, and 3*

Security Questions: We will use these questions as a means of verifying the accountholder.
These questions must be answered. (If doesn't apply, answer "I did not have a job." etc)
What was the name of the company where you had your first job? _I did not have a job_

What was the make and model (example: Ford Mustang) of your first car? _Toyota Camry_

What is the middle name of your youngest sibling? _____

#### LIFE CLAIM SETTLEMENT OPTION DISCLOSURE ACKNOWLEDGEMENT

I acknowledge that I have been advised of and understand the disclosures below. I have been encouraged to ask any questions that I have concerning these disclosures. I have requested the State Farm Benefit Management Account from one of the State Farm® life insurance companies as my settlement option. I understand the life insurance companies are affiliated with State Farm Bank®, which may provide some services for this option, but the option chosen is not being offered by the Bank. If anyone asserts that this product is federally insured or guaranteed, or is as safe as an insured deposit, I should call the Office of Thrift Supervision, Regional Director at 312-917-5000.

I understand that the product I have chosen: **(1) is not insured by the FDIC (2) is not a deposit or other obligation of any bank and is not guaranteed by the bank or by the federal government (3) involves investment risks, including the possible loss of principal invested.**

Date: _9/30/10_   Signature of Customer: _Alana Thomas_

#### SUBSTITUTE FORM W-9

**Section 3 - Must be completed for all claims.**
W-9 Information/Taxpayer Identification Number (TIN): Social Security Number _____

EIN (Entity only) _____

Under penalties of perjury, I certify that: (1) The number shown on this form is my correct taxpayer identification number. (2) The payee is not subject to backup withholding due to failure to report interest and dividend income and (3) I am a United States person (including a United States resident alien).

Name: ___   **ALANA THOMAS**

Address: _____
(Physical Address - Include Street, Apartment Number, P.O. Box)

City: _Calevipon_   State: _AL_   ZIP: _35111_

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Date: _9/30/10_   Signature of Customer: _Alana Thomas_

1001251                                                          Alabama          131327.18  08-16-2010

**REDACTED**

| Check Date Type: | **04** | Check Date | Check Date Type: | **11** | Check Date |
|---|---|---|---|---|---|

# IMPORTANT NOTICE

You must complete this form to name a beneficiary on your
State Farm Benefit Management Account

If you have ANY questions about your State Farm Benefit Management Account®,
call toll-free 1-877-734-2265

**If you choose not to designate a beneficiary for your account, the balance in your account will, upon your death, be payable to your estate. If you wish to designate a beneficiary, please return this completed form to the address noted above.**

## Beneficiary Designation Form

**Account Holder's Name:**

**Account Number (if known):** | **Policy Number:**

**COMPLETE SECTIONS FOR ALL BENEFICIARIES, GIVING THE FULL NAME, AGE, ADDRESS (if different from the account holder) AND RELATIONSHIP TO THE ACCOUNT HOLDER FOR EACH. FOR CHILDREN AS A CLASS, NAME THOSE NOW LIVING. TWO OR MORE BENEFICIARIES OF A CLASS WILL SHARE EQUALLY. PLEASE TYPE OR PRINT IN INK AND INITIAL ANY CROSS-OUTS.**

*BENEFICIARIES*

**PRIMARY** - Name, Age, Relationship, Address, Taxpayer Identification Number (if available)

Justin Caleb Thomas- 20 - Brother

**SUCCESSOR** - Name, Age, Relationship, Address, Taxpayer Identification Number (if available)
**(If all Primary Beneficiaries are deceased)**

Print
Name: **ALANA THOMAS**                     Date: 9/30/10

Signature: *Alana Thomas*              Social Security Number

Your phone number:

124731   01-25-2005

REDACTED

Sep 30 10 03:36p                                                                                          p.5

**11** ☐

# AUTHORIZATION - COUNTRYWIDE

State Farm Life Insurance Company/State Farm Life and Accident Assurance Company

I authorize any source having information about   **DUSTIN BANKS**                                                    to give to State Farm Life Insurance Company/State Farm Life and Accident Assurance Company, its contractors, reinsurers, or its representatives all information available within the last ten (10) years as to health history, diagnosis, treatment or prognosis with respect to any physical or mental condition and non-medical information including, but not limited to, employment history, income and other insurance coverage. "Source" includes any doctor, hospital, clinic, U.S. Veteran's Administration (VA) Hospital, mental health facility, or any other medically related facility, insurance company, consumer reporting agency or employer. Any information obtained will be used to determine eligibility for or continuance of insurance or the validity or truthfulness of any claim presented. State Farm Life Insurance Company/State Farm Life and Accident Assurance Company may release this information to its affiliates, their contractors, reinsurers, representatives, other insurance companies, for their use in connection with insurance transactions or as required by law. Information obtained pursuant to this Authorization may later be redisclosed and at that point may no longer be protected under federal law.

I understand I may revoke this Authorization by providing written revocation to State Farm Life Insurance Company/State Farm Life and Accident Assurance Company except to the extent that State Farm Life Insurance Company/State Farm Life and Accident Assurance Company has taken action in reliance on this Authorization.

I understand that I may refuse to sign this Authorization. However, doing so may result in a claim for benefits being denied.

This Authorization is valid for two (2) years from the date of signature and a photocopy is as valid as the original. I have received a copy of this Authorization wording.

Date Signed  9/30/10                            Claimant's Signature  _Alana Thomas_

                                               Witness  _Nazette Burns_

1003705              Alabama                                              106194.3  09-08-2010

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

STATE  FARM  LIFE  INSURANCE )
COMPANY, )
            )
        Plaintiff, )
            )
vs. )
            )
ALANA THOMAS, )
            )
        Defendant. )

## COMPLAINT FOR DECLARATORY JUDGMENT

Exhibit 4 – 11/15/10 Letter of Representation

*William G. Barnes, LL.M.*

*Merri Bouchet Sweatt, Esq.*

**Attorneys and Counselors at Law**
*Serving and Protecting*

Facsimile:

Member
U.S. Supreme Court Bar

Phone:

Member
Alabama State Bar

November 15, 2010

State Farm Life Insurance Company

Re:    Dustin Allen Banks, deceased
       Alana Danielle Thomas, spouse
       LF-2735-1761

Sir:

I represent Ms. Alana Danielle Thomas, the spouse of Dustin Allen Banks.  It is my understanding that Mr. Banks had an life insurance policy which is payable to the named beneficiary, or his next of kin, his spouse.

I understand that a death certificate for Dustin Banks was issued which indicated that the deceased was divorced, based upon information that the deceased father, Allen Banks, had presented to the coroner's office.  That information is incorrect and unfounded.

Pursuant to the law of Alabama, Ms. Thomas is an emancipated adult where she married and bore the child of the deceased, on November 30, 2009.

Please direct all claim information and necessary forms to my attention at the above address and numbers.  Your immediate attention is greatly appreciated.

Sincerely yours,

William G. Barnes
Attorney at Law

WGB:bb
Enclosures:

---

*From the desk of...*
*William G. Barnes, LL.M.*
*Attorney and Counselor at Law*

REDACTED

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **STATE FARM LIFE INSURANCE COMPANY,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **ALANA THOMAS,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Exhibit 5 – Certificate of Death

# ALABAMA
## CERTIFICATE OF DEATH

State File Number 101

County File Number

| 1. DECEASED—NAME   First   Middle   Last (Type last name all capital) | 2. DATE OF DEATH(Month, Day, Year) | 3. COUNTY OF DEATH |
|---|---|---|
| Dustin   Allen   BANKS | | Bibb |

| 4. CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE | | 5. INSIDE CITY LIMITS (Specify Yes or No) | 6. PLACE OF DEATH—HOSPITAL OR OTHER INSTITUTION—(If not in either, give street and number) |
|---|---|---|---|
| West Blocton | 35184 | No | |

| 7. IF HOSPITAL (Specify Inpatient, ER or Outpatient, DOA) | 8. IF HISPANIC ORIGIN (Specify Yes or No) If Yes, Specify Cuban, Mexican, Puerto Rican, etc. | 9. RACE—Specify (American Indian, Black, White, etc.) | 10. SEX |
|---|---|---|---|
| | No | White | Male |

| 11. AGE | UNDER 1 YEAR | | UNDER 1 DAY | | 12. DATE OF BIRTH (Month, Day, Year) | 14. DECEASED'S SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|
| 20   Yrs. | MOS. | DAYS | HOURS | MINS. | | |

| 15. EDUCATION (Specify only highest grade completed (Specify) Elementary or High School (0-12)   College (1-4 or 5+) | 16. MARITAL STATUS (Specify Married, Never Married, Widowed, Divorced) | 17. SURVIVING SPOUSE (If wife, give maiden name) | 18. Was Decedent ever in Armed Forces (Specify Yes or No) |
|---|---|---|---|
| 12 | Divorced | | No |

| 19. STATE OF BIRTH (If not in USA, name country) | 20. RESIDENCE—STATE | 21. COUNTY | 22. CITY, TOWN, OR LOCATION AND ZIP CODE |
|---|---|---|---|
| Alabama | Alabama | Tuscaloosa | Tuscaloosa   35404 |

| 23. INSIDE CITY LIMITS (Specify Yes or No) | 24. STREET AND NUMBER | 25. INFORMANT—Name and Address |
|---|---|---|
| Yes | | Allen Banks |

| 26. USUAL OCCUPATION (Give kind of work done during most of working life even if retired) | 27. KIND OF BUSINESS OR INDUSTRY |
|---|---|
| Mechanic | Averitt Express |

| 28. FATHER—NAME   First   Middle   Last | 29. MAIDEN NAME OF MOTHER—   First   Middle   Last |
|---|---|
| Allen   Banks | Mary   Smith |

| 30. DISPOSITION OF BODY (Specify Burial, Cremation, Marine Donation, Hospital Disposal, Other) | 31. DATE OF DISPOSITION (Month, Day, Year) | 32. CEMETERY OR CREMATORY—Name | 33. LOCATION—(City or Town—State) |
|---|---|---|---|
| Burial | Oct. 1, 2010 | Memory Hill Gardens | Tuscaloosa, AL. |

| 34. FUNERAL HOME—Name and Address | 35. FUNERAL DIRECTOR—Signature | 36. DATE SIGNED BY FUNERAL DIRECTOR |
|---|---|---|
| Memory Chapel Funeral Hm | | Oct. 7, 2010 |

| 37.   ☐ Certifying Physician   Physician certifying cause of death "To the best of my knowledge death occurred at the time and date, and due to the cause(s) and manner stated." ☐ Medical Examiner ☐ Coroner   "On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, place, and due to the cause(s) and manner stated." Signature | 38. DATE SIGNED (Month, Day, Year) |
|---|---|
| Dwayne Mabd | |

| 39. TIME AND DATE OF DEATH | 40. DATE AND TIME PRONOUNCED DEAD (For Corner/M.E. use only) | 41. NAME AND TITLE OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 46) |
|---|---|---|
| | 9-26-10   9:20 AM | Dwayne Mabd   Coroner |

| 42. ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 46) | 43. CERTIFIER LICENSE NUMBER |
|---|---|
| Centreville Al 35042 | |

| 44. REGISTRAR—Signature | For State or County Use Only | 45. DATE FILED (Month, Day, Year) |
|---|---|---|
| | | |

## MEDICAL CERTIFICATION

| 46. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. LIST ONLY ONE CAUSE ON EACH LINE. | APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) ➤ Gunshot Wound | |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST ➤   DUE TO (OR AS A CONSEQUENCE OF): | |
| DUE TO (OR AS A CONSEQUENCE OF): | |
| DUE TO (OR AS A CONSEQUENCE OF): | |

| 47. PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | 48. WAS THERE A PREGNANCY IN LAST 12 DAYS? (Specify Yes, No, or Unk.) |
|---|---|

| 49. MANNER OF DEATH (Specify—Accident, Homicide, Suicide, Undetermined Circumstances, Pending Investigation, Natural Cause) | 50. AUTOPSY (Specify Yes or No) | 51. (If yes, were findings considered in determining cause of death) (Specify Yes or No) |
|---|---|---|
| Suicide | Yes | Yes |

| 52. HOW INJURY OCCURRED (Enter nature of injury in Item 46, Part I, or Item 47, Part II) | 53. DATE OF INJURY (Month, Day, Year) | 54. HOUR OF INJURY |
|---|---|---|
| | | M. |

| 55. INJURY AT WORK (Specify Yes or No) | 56. PLACE OF INJURY—(Specify at home, farm, street, factory, office building, etc.) | 57. LOCATION OF INJURY (Street or R.F.D. No., City or Town, State) |
|---|---|---|

This is a legal record and must be filed within five (5) days after death.

ADPH-HS 2/Rev. 11-93

REDACTED

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

STATE FARM LIFE INSURANCE
COMPANY,

      Plaintiff,

vs.

ALANA THOMAS,

      Defendant.

)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR DECLARATORY JUDGMENT

Exhibit 6 – Certified Report of Autopsy

LF2735 - 1761



ALABAMA
DEPARTMENT OF FORENSIC SCIENCES

Auburn, Alabama 36830
Telephone
Facsimile

MAILING ADDRESS

Auburn, Alabama 36831-3510

March 28, 2011

State Farm Insurance Company
Attention: Marcy Leach, Life Claim Examiner

Bloomington, Illinois 61709-0001

Re:  ADFS Case Number 10MM00694
Dustin Banks

Dear Ms. Leach:

I, Michael F. Sparks, Director, hereby certify that the attached is a true and complete copy of the
report(s) of our findings pertaining to the above case which is on file in my custody in the
Alabama Department of Forensic Sciences, Auburn, Alabama, and that I am the legal custodian
of said report(s).

I further certify that it was in the regular course of business of said Department for such report(s)
to be made at the time of the events, transactions or occurrences to which they refer or within a
reasonable time thereafter.

In accordance with Code of Alabama (1975) Section 36-18-27, et seq., DNA records may
currently be disclosed only; 1) to law enforcement agencies for DNA identification purposes or;
2) For criminal defense purposes, to a defendant. As this is a civil matter and not law
enforcement or criminal defense purpose, any DNA records, if applicable, associated with this
case have been redacted.

Michael F. Sparks, Director
Legal Custodian of Records

Sworn to and subscribed before me
this 28th day of March 2011

Notary Public
My Commission Expires Feb. 5th 2019

REDACTED



ALABAMA
DEPARTMENT OF FORENSIC SCIENCES

REGIONAL LABORATORY
MONTGOMERY. AL 36121-0516

MEDICAL EXAMINER

# REPORT OF AUTOPSY

**CASE NO.:** 10MM00694

**DATE:** September 28, 2010
**TIME:** 0840 hours

**NAME:** DUSTIN ALLEN BANKS

**DATE OF DEATH:**

**COUNTY:** Bibb

**AGE:** 20 years    **RACE:** W    **SEX:** M    **LENGTH:** 64 inches    **WEIGHT:** 174 pounds

## FINAL DIAGNOSES

I.  Tight contact shotgun wound, right neck.
   A. Entrance wound: Right neck.
   B. Direction: Front to back, bottom to top, right to left.
   C. Pathway: Skin, jaw, base of skull, brain.
   D. Recovery: Pellets, shot cup recovered from brain.
   E. Associated injuries: Facial and skull fractures, lacerated brain.

II. Acute alcohol intoxication.

      **CAUSE OF DEATH:**    Shotgun wound.

      **MANNER OF DEATH:**    Suicide.

REDACTED

Case #   10MM00694
Name     DUSTIN ALLEN BANKS

## CASE NARRATIVE

Decedent was at his former mother-in-law's residence. He exited the residence, and a shot was heard. Emergency personnel were called, arrived on the scene and found Decedent lying prone in the flower bed. He was pronounced at the scene.

## EVIDENCE OF INJURY

There is a tight contact shotgun entry wound in the right medial neck 8-1/2 inches from the top of the head and 1-1/2 inches from the midline. The wound measures 1-1/2 inches in transverse axis and 1/2 inch in vertical axis. There is soot identified at the medial edge of the wound. The projectiles are seen to extend upward and to the left. There is a complete disruption of the lower jaw, base of the tongue and hard palate. There is a diffuse comminuted fracture of the base of the skull. It is seen to extend into the temporal and parietal bones bilaterally. The brain is pulpified within the area of midbrain and pons as well as the right and left temporal, parietal lobes. A plastic shot cup is retrieved from the left parietal lobe of the brain along with multiple small shotgun pellets.

There is a laceration on the left upper portion of the nose 1/3 inch in length. There is a laceration beneath the left eyebrow 1/4 inch in length. There is ecchymosis beneath the right eye.

## EXTERNAL EXAMINATION

The following excludes any previously described injuries.

BODY HABITUS: The body is that of a White male, appearing consistent with the given age of 20 years.

CONDITION OF BODY: There is no evidence of previous embalming or decomposition. The body is cool to the touch. There is diffuse rigor mortis. There is posterior lividity.

IDENTIFYING MARKS: None.

HEAD AND FACE: The normocephalic head is covered by dark brown hair.

EYES: The irides are brown. The conjunctivae and sclerae are unremarkable.

NOSE: The nose is unremarkable.

ORAL CAVITY: Other than the injuries identified above, the oral cavity is unremarkable.

EARS: The ears are unremarkable.

NECK: The neck is unremarkable.

Case #      10MM00694
Name        DUSTIN ALLEN BANKS

CHEST: The chest is unremarkable.

ABDOMEN: The abdomen is unremarkable.

EXTERNAL GENITALIA: The genitalia are normal adult male external genitalia.

UPPER EXTREMITIES: The upper extremities are unremarkable.

LOWER EXTREMITIES: The lower extremities are unremarkable.

BACK AND ANUS: The back and anus are unremarkable.

CLOTHING AND PERSONAL EFFECTS: One pair of boots, one pair of socks, one T-shirt, one pair of jeans with belt, one pair of underwear, two pennies, one receipt and one candy wrapper.

## EVIDENCE OF MEDICAL INTERVENTION

None.

## EVIDENCE OF ORGAN HARVESTING/ORGAN DONATION

None.

## INTERNAL EXAMINATION

The following excludes any previously described injuries.

SEROSAL CAVITIES: The pleural, pericardial and peritoneal cavities are unremarkable.

CENTRAL NERVOUS SYSTEM: Other than the acute injuries identified above, the 1350-gram brain is grossly unremarkable. The great vessels at the base of the brain are completely disrupted.

ORGANS OF THE NECK: The hyoid bone and thyroid cartilages are intact. The strap muscles of the anterior neck are free of injury.

CARDIOVASCULAR SYSTEM: The 350-gram heart displays a right dominant coronary artery system. The coronary arteries are widely patent and thin. The ostia of the left coronary artery display an area of atherosclerotic piquing surrounding the ostium. The ostium, however, is widely patent. The valves are pliant. The myocardium is of normal color and consistency. The aorta displays no abnormality. The great vessels are grossly unremarkable. The inferior vena cava is unremarkable.

Case #        10MM00694
Name          DUSTIN ALLEN BANKS

RESPIRATORY SYSTEM: The 400-gram right and left lungs are congested in appearance. They are otherwise unremarkable.

HEPATOBILIARY SYSTEM: The 1250-gram liver displays a smooth parenchyma. The gallbladder contains approximately 10 cubic centimeters of greenish bile. The common bile duct is patent. The pancreas is unremarkable.

IMMUNOLOGIC SYSTEM: The 200-gram spleen displays a normal-appearing architecture.

ENDOCRINE SYSTEM: The thyroid, pituitary and adrenal glands are grossly unremarkable.

GASTROINTESTINAL SYSTEM: The esophagus is unremarkable. The stomach contains a brownish mucoid material, but is otherwise unremarkable. The small and large bowels are grossly unremarkable.

GENITOURINARY SYSTEM: The 140-gram right and left kidneys display smooth cortices. The calyces, pelves, ureters and urinary bladder are unremarkable.

REPRODUCTIVE SYSTEM: The prostate gland is unremarkable.

MUSCULOSKELETAL SYSTEM: The musculoskeletal system is unremarkable.

HEMATOPOIETIC SYSTEM: The hematopoietic system is unremarkable.

## ANCILLARY STUDIES

POSTMORTEM RADIOGRAPHS: Revealed pellets and shot cup.

TOXICOLOGY: Acute alcohol intoxication. See attached report.

## LOGISTICS

AUTHORIZATION: Code of Alabama (1975), Section 36-18-2; Michael W. Jackson, District Attorney.

IDENTIFICATION: Herman Cowan, Driver, Coroner Transport.

PERSONS PRESENT: Chelsea Merrell and Braynard Collins, Forensic Pathology Technicians.

EVIDENCE: Photographs, radiographs, fingerprints, DNA card, blood, urine, vitreous, tissue and projectile

Case #          10MM00694
Name            DUSTIN ALLEN BANKS

The facts stated herein are correct to the best of my knowledge and opinion at the time of report completion.


Stephen F. Boudreau, MD
Senior State Medical Examiner

November 1, 2010
Date Signed

SFB/iss/ins/bf/rb

Page 5 of 5



ALABAMA
# DEPARTMENT OF FORENSIC SCIENCES

Telephone
Facsimile

## TOXICOLOGICAL ANALYSIS REPORT

| Subject deceased | Case No. |
|---|---|
| **BANKS, DUSTIN ALLEN** | **10MM00694** |

| Report to | Stephen F. Boudreau, MD | Case Date | 09/27/2010 |
|---|---|---|---|
| | Alabama Department of Forensic Sciences | Reported | 10/29/2010 |

Montgomery, AL 36124-0591

### Evidence analyzed (Including sub-items)

| Item | Specimen | Analyte | Result | Method(s) | Notes |
|---|---|---|---|---|---|
| 1F1 | Blood, subclavian | Ethanol | 0.178 g/100 mL | HS/GC | |
| 1F1 | Blood, subclavian | Drugs | ND | EIA | |
| 1F2-1F3 | Blood, subclavian | | NA | | |
| 1F4 | Urine | Ethanol | 0.164 g/100 mL | HS/GC | |
| 1F5 | Urine | | NA | | |
| 1F6 | Vitreous humor | Ethanol | 0.141 g/100 mL | HS/GC | |

### Footnotes

NA - Not analyzed/Not applicable
ND - None detected

### Comments

Evidence was received in a sealed plastic bag.

SCOPE OF DRUG ANALYSIS IS LIMITED TO THE FOLLOWING:
Amphetamine class, barbiturate class, benzodiazepine class, cannabinoids, carisoprodol/meprobamate, cocaine and/or metabolite(s), cyclobenzaprine, dextromethorphan, fentanyl, meperidine, methadone, opiate class, propoxyphene, tramadol, tricyclic antidepressants, zolpidem.

*Remaining evidence will be disposed 6 months from the date of this report unless storage space becomes limited or alternate arrangements are made prior thereto.*

REDACTED



*An ASCLD/LAB Accredited Laboratory since October 2003*

c:\labsave\80003694.RPT



**ALABAMA**
**DEPARTMENT OF FORENSIC SCIENCES**

Telephone
Facsimile

## TOXICOLOGICAL ANALYSIS REPORT

| Subject deceased | Case No. |
|---|---|
| **BANKS, DUSTIN ALLEN** | **10MM00694** |

*Kelly M. Wood*          10/29/2010

Kelly M. Wood, MSFS
Forensic Scientist

**REDACTED**

──────────── End of Report ────────────

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **STATE FARM LIFE INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **ALANA THOMAS,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Exhibit 7 – 4/4/11 Demand Letter from Counsel

## *William G. Barnes, LL.M.*

| Facsimile: | **Attorney and Counselor at Law** | Phone: |
|---|---|---|
| | *"Serving and Protecting"* | |
| Member | | Member |
| U.S. Supreme Court Bar | | Alabama State Bar |

April 4, 2011

**REDACTED**

State Farm Insurance Companies
Ms. Marcy Leach

Re:    Dustin Banks
        Claim: 55699887

Dear Ms. Leach:

I am in receipt of your correspondence of March 21, 2011. I do not have any information regarding the Bibb County Sheriff office, or the police report, you have requested that I provide to State Farm Insurance. I have written to the Bibb County District Attorney's office requesting information and a copy of the case file, but have not received any response. I have further requested information regarding the Grand Jury proceedings which you suggested was being conducted, but again, I have not received any information. I do not have any information regarding the Grand Jury as Grand Juries are conducted in secrecy.

I do not have any information to provide to you regarding this matter. Ms. Thomas is indigent and without resources to employ a private investigator to conduct an investigation as to circumstances regarding the Bibb County authorities investigation into the death of her husband, Dustin. If a Grand Jury was convened, those proceedings would have been conducted in secrecy. If a Grand Jury has been convened, as you state your information indicates, no indictment has been rendered, to my knowledge in the case, and the death of Dustin has not been determined to be a homicide, or a result of foul play. If there was any evidence of a homicide, or foul play, surely an indictment would have been forthcoming in the matter. From my own limited knowledge of the facts, Mr. Banks accidently died from a shotgun blast while he was handling the firearm. Apparently there were no witnesses to the incident which resulted in the death of Mr. Banks, as none, to my knowledge, have been identified, or forthcoming.

Mrs. Thomas is looking for the financial support she and her infant son need upon the loss of the financial resources provided by Mr. Banks before his untimely death. As I stated

---

*From the desk of...*
*William G. Barnes, LL.M.*
*Attorney and Counselor at Law*

previously, Mrs. Thomas is without adequate financial resources to provide for herself and her young son. She is looking for the insurance proceeds that her husband contracted for to help take care of her and Mr. Bank's infant child in the event he was to die and leave them without the ability to provide for their own well being. Mr. Banks died on September 26, 2010, more than six months ago. State Farm has had more than adequate time to investigate the claim based upon Mr. Banks death. It is time State Farm Insurance either fulfills the contract made with Mr. Banks, of which Mrs. Thomas is the third party beneficiary, or rejects the claim based upon specific findings of your investigation.

Mrs. Thomas has cooperated with State Farm and been patiently awaiting State Farm finalizing its investigation. However, the investigation appears not to be dependent upon State Farm, but upon State Farm relying upon some other entity, or entities, such as the Bibb County Sheriff's Office, and myself, to do their work for them while Mrs. Thomas and her infant son await in poverty and squalor for State Farm's decision. Mrs. Banks is dependent upon me to take the necessary action to bring this matter to a conclusion on her, and her infant son's behalf. This should be accomplished within the next two weeks.

Sincerely,

William G. Barnes

WGB:bb

Enclosure

cc:    Mrs. Alana Thomas