IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **STATE FARM LIFE INSURANCE COMPANY** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )    CASE NO. 7:11-CV-1803-SLB<br>) |
| **ALANA THOMAS,** | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is currently before the court on plaintiff State Farm Life Insurance Company's ("State Farm") Motion for Summary Judgment. (Doc. 15.)[1] State Farm seeks to resolve certain coverage issues arising out of a life insurance policy purchased by Dustin Banks ("Banks") under which the defendant, Alana Thomas ("Thomas"), is listed as the beneficiary. State Farm alleges that because Banks died by a self-inflicted shotgun wound within two years of the opening of the policy, Thomas should only receive the amount listed in the policy's "Limited Death Benefit" clause and not the full amount under the "Basic Plan Amount." (Doc. 1 at 6.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that State Farm's Motion is due to be granted.

---

[1]      Reference to a document number, ["Doc.___"], refers to the number assigned to each document as it is filed in the court's record.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial.").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." *Id.* at 249. In doing so, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## II. STATEMENT OF FACTS[2]

Plaintiff, State Farm, brought this Motion for Summary Judgment seeking a determination of their payment obligations under a term life insurance policy purchased by Banks, under which defendant and beneficiary, Thomas, seeks payment as a result of Banks's death on September 26, 2010. (Doc. 1 at 1, 9, 26.) On November 10, 2009, Banks, age 19, purchased a Term Life Insurance Policy, Policy Number LF-2735-1761 ("Policy"), with State Farm, listing Thomas, age

---

[2] As required when evaluating a motion for summary judgment, the court states the facts and all reasonable inferences arising from them in the light most favorable to defendant, the nonmoving party. *See, e.g.*, *Allen v. Tyson Foods, Inc.*, F.3d 642, 646 (11th Cir. 1997) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citations omitted)).

15,[3] as the sole beneficiary. (Doc. 1 at 24, 26; doc. 15-2 at 33.) Thomas and Banks were engaged to be married when Banks purchased the Policy; additionally, they had a one-year old child. (Doc. 15-2 at 33-34.) Banks purchased State Farm's "Basic Plan Amount" which allocated $100,000 payable to Thomas upon Banks's death. (Doc. 15-2 at 6.) Additional terms to Banks's policy provided for a "Limited Death Benefit"; specifically, the "Limited Death Benefit" provided that if the insured were to die "by suicide while sane or self-destruction while insane within two years from the policy date, the Basic Plan Amount will not be paid. The proceeds in this case will be limited to the premiums paid on the Basic Plan and any dividends paid in the Basic Plan." (Doc. 15-2 at 14.) On September 26, 2010, 320 days after the purchase of the policy, Banks died of a self-inflicted shotgun wound from an Express Pump 12 gauge shotgun while visiting Thomas at Sara Stiltner's ("Stiltner")[4] mobile home located at 156 Overlook Road, Green Pond, Alabama. (Doc. 15-2 at 49-51, 65.)

Early in the morning of September 26, 2010, Banks drove to Stiltner's mobile home to visit Thomas. (Doc. 15-2 at 51-52.) On the date in question, Banks and Thomas were married, but living in separate locations. (*Id*. at 37, 39, 40.) Some time before 7:20 a.m., Thomas and Banks conversed outside the back

---

[3] While the record does not explicitly state Thomas's date of birth or age at the time of the policy's purchase date on November 10, 2009, the record reflects that Thomas and Banks married on Thomas's 16th birthday and the policy was purchased prior to their marriage.

[4] The court is adopting Detective Jody Wade's spelling of this individual's name. The deposition of Alana Thomas spells the name "Sarah Stentler."

deck of the mobile home.  (Doc. 15-2 at 50, 52.)  Banks was inebriated during the conversation with Thomas.  (*Id*. at 53; doc. 1 at 48.)  Thomas asked Banks to leave, whereupon Banks said, "If I'm going to go, I'm going to go big."  (Doc. 15-2 at 52.)  Banks then walked to his Ford Ranger pickup truck, retrieved the Express Pump 12 gauge shotgun and shotgun shell, loaded the shotgun, and walked back to Thomas's location.  (Doc. 15-2 at 50, 52, 57.)  Banks placed the loaded shotgun underneath his chin, Thomas turned her back to Banks, and the shotgun fired.  (*Id*. at 52.)  Thomas did not see Banks pull the trigger to the shotgun.  (*Id*. at 41.)

Immediately after the shotgun fired, Thomas ran to the home of Greg Sparks.  (Doc. 15-2 at 28.)  Sparks is Stiltner's neighbor.  (*Id*.)  Upon Thomas entering Sparks's home, Sparks placed a 911 call which the Bibb County Sheriff's office received at 7:20 a.m.  (*Id*. at 49.)  Thomas remained at the Sparks residence until Wade questioned her.  (*Id*. at 52.)

Approximately forty minutes after the Bibb County Sheriff's office received Sparks's 911 call, Jody Wade ("Wade") was assigned as the lead investigating officer.  (Doc. 15-2 at 49.)  Upon receiving the assignment, Wade immediately drove to Stiltner's mobile home.  (*Id*. at 49-50.)  In Wade's deposition, he testified that he found Banks lying on the ground face down near the back deck of the mobile home.  (*Id*. at 50.)  Wade was able to identify Banks through Thomas identifying the body as well as by Banks's driver's license being inspected while Banks's body was being transported to the coroner's office.  (*Id*.)

Lying next to Banks's right foot was the Express Pump 12 gauge shotgun. (*Id*.) Wade's investigation of Banks's body showed the entrance wound caused by the firing of the shotgun originated from underneath Banks's chin and the projectile traveled in an upwards direction. (*Id*. at 56.) Additionally, the wound was consistent with the barrel of the shotgun being held in close proximity to but not in direct contact with Banks's skin. (*Id*. at 60-61.) When investigating the area immediately surrounding Banks's location, Wade found no evidence indicating that Banks slipped immediately preceding the self-inflicted gunshot wound. (*Id*. at 62.) Further investigation by Wade revealed the door to Banks's Ford Ranger had been left open. (Doc. 15-2 at 57.) Inside the vehicle on the front seat was an open box of Winchester 12 gauge shotgun ammunition. (*Id*. at 58.)

Banks's body was then transported to the coroner. (Doc. 15-2 at 52.) Downey McGee issued the Certificate of Death. (Doc. 1 at 40.) Banks was pronounced dead on September 26, 2010, at 9:20 a.m. (*Id*.) The Certificate of Death lists the cause of death as gunshot wound and the manner of death as suicide. (Doc. 1 at 40.) Additionally, the original Certificate of Death lists Banks's marital status as divorced. (*Id*.) This was due to Banks's father providing the information to the coroner. (*Id*. at 38.) The Certificate of Death was amended on October 21, 2010, changing Banks's marital status to "married" and listing the surviving spouse as "Alana Thomas." (Doc. 15-2 at 66.)

Dr. Stephen Boudreau completed Banks's autopsy report on November 1, 2010. (Doc. 15-2 at 73.) The autopsy revealed Banks died of a tight contact

shotgun wound originating at the right neck. (*Id*. at 69.) The projectile traveled in an upward direction through Banks's skin, jaw, base of skull, and brain and exited through the rear of Banks's skull. (Doc. 15-2 at 69-70.) Gun powder soot was identified around the edge of the wound entrance. (*Id*. at 70.) The toxicology screen revealed that at the time of death, Banks suffered from acute alcohol intoxication shown by a blood alcohol content ("BAC") level of approximately 0.16. (Doc. 1 at 48.) The cause of death listed by the autopsy was shotgun wound and the manner of death listed was suicide. (Doc. 15-2 at 69.)

The depositions of Wade and Thomas reveal conflicting information as to the nature of the marriage between Thomas and Banks. During Wade's investigation, he interviewed Thomas and Stiltner. (Doc. 15-2 at 51, 63.) Thomas told Wade she and Banks were in the process of obtaining a divorce. (*Id*. at 52, 63.) When Wade interviewed Stiltner, she corroborated Thomas's assertion of marital issues. (*Id*. at 51.) However, during Thomas's deposition, she stated that she and Banks had not discussed divorce. (*Id*. at 40.)

### III. DISCUSSION

Although there is a rebuttable presumption against suicide in Alabama, State Farm claims the Certificate of Death, autopsy report, and investigation by Wade, when viewed in the totality of the circumstances, overcome and negate the presumption against suicide and shift the burden of proof onto Thomas to create a question of fact as to the cause of Banks's death. (Doc. 15-1 at 14-16, 18.) Thomas seeks to create a genuine dispute of material fact by claiming that a

7

possibility exists that Banks accidently discharged the shotgun, killing himself. (Doc. 16 at 17.)

Under Alabama law, in actions on life insurance policies where the insurance company raises the affirmative defense of suicide to preclude payment to a beneficiary, the burden of proof to show suicide rests on the insurer. *Federated Guaranty Trust Life Ins. Co. v. Wilkins*, 435 So. 2d 10, 13 (Ala. 1983). Additionally, under Alabama law there is a presumption that a normal and sane person will not commit suicide. *Jefferson Standard Life Ins. Co. v. Wigley*, 29 So. 2d 218, 219 (Ala. 1947); *see also Duncan v. American Home Assurance Co., Inc.*, 747 F. Supp 1418, 1419 (M.D. Ala. 1990). However, if the insurer can produce direct and positive evidence of suicide, then the burden of proof shifts back to the beneficiary to present conflicting inferences against suicide. *Birmingham Trust & Savings v. Acacia Mut. Life Ass'n.*, 130 So. 327, 328 (Ala. 1930); *see also Mitchell v. Mitchell*, 69 So. 3d 904, 910 (Ala. Civ. App. 2011) (discussing in general when burdens of proof shift and the effect of the shift). Evidence sufficient to overcome the presumption against suicide and shift the burden of proof include death certificates, coroner's reports, and police reports. *Duncan*, 747 F. Supp at 1419. If the beneficiary is unable to produce any reasonable conflicting inferences, then the presumption against suicide has no field of operation. *Fleetwood v. Pac. Mut. Life Ins. Co.*, 21 So. 2d 696, 698 (Ala. 1945).

A party opposing a properly submitted summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts

showing there is a genuine dispute for trial. *Anderson*, 477 U.S. at 256. "For factual allegations to be considered genuine, they must have a real basis in the record." *Secondo v. Campbell*, 327 F. App'x 126, 130 (11th Cir. 2009) (quoting *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)). "Unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Sellers v. GMAC Mortg. Grp., Inc.*, 298 F. App'x 924, 926 (11th Cir. 2008) (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)). Additionally, "speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is the primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

State Farm contends that the Certificate of Death listing manner of death as suicide, the autopsy report listing manner of death as suicide, and the deposition testimony of Wade create direct and positive evidence of Banks's suicide. (Doc. 15-1 at 15.) The court agrees. Thomas counters that there is a question of fact as to whether Banks's death was accidental, and she supports this claim by suggesting that "Banks was handling a shotgun while in an inebriated state, slipped and/or stumbled in some decorative flower bed boarding stones, and fell on the shotgun which discharged, accidently killing Banks instantly." (Doc. 16 at 6.) However, other than plaintiff's speculation, there is no evidence before the court that Mr. Banks slipped or fell causing the shotgun to discharge accidentally. In addition, the court notes that Mr. Banks made a statement immediately before his death that could be reasonably interpreted as threatening suicide.

Under Alabama law, the burden of proof is on State Farm to show through direct and positive evidence that Banks committed suicide. *Federated Guaranty Life Ins. Co.*, 435 So. 2d at 13. To support its Motion for Summary Judgment, State Farm submitted the Certificate of Death listing Banks's manner of death as suicide, an autopsy report listing Banks's manner of death as suicide, and the deposition testimony of Wade which contains the results of his investigation at the scene of Banks's death. (Doc. 15-2 at 56, 63, 65, 69.) Under Alabama law, Banks's Certificate of Death is presumptive evidence of the facts stated therein. Ala. Code § 12-21-101. This shifts the burden of proof onto Thomas to rebut the evidence and create a genuine issue of fact concerning the manner of death. *See Birmingham Trust & Sav.*, 130 So. at 328. If Thomas cannot present any evidence supporting a reasonable conflicting inference against suicide, then the presumption against suicide has no field of operation. *Fleetwood*, 21 So. 2d at 698.

Thomas fails to offer any evidence to support her assertion of accidental death caused by a slip or fall. Thomas's speculation that Banks's death was accidental does not create a genuine issue of fact for trial. *Cordoba*, 419 F.3d at 1181. Evidence which affords nothing more than mere speculation or conjecture is insufficient to warrant submission of the case to a jury. Because Thomas has failed to contradict State Farm's evidence, State Farm's evidence is taken as direct and positive evidence of suicide. *Birmingham Trust and Sav.*, 130 So. at 328. Thomas has presented no evidence to support a conflicting inference against suicide, thus the presumption against suicide has no field of operation. *Fleetwood*,

21 So. 2d at 698. Because there is no question of fact as to whether Banks committed suicide within two years from the policy date, State Farm is entitled to judgment as a matter of law.

## IV. CONCLUSION

Based on the foregoing, the court finds that plaintiff's Motion for Summary Judgment, (doc. 15), is due to be granted. An Order granting plaintiff's Motion will be entered contemporaneously herewith.

**DONE**, this 26th day of February, 2013.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE